Keating, J.
To the knowing and the novice alike, the name Warren Spahn brings to mind one of professional baseball’s great left-handed pitchers.
Each year, millions of people attend various ball parks throughout the country, hoping to root their team on to victory. National network systems transmit the games into homes and offices and huge sums are expended by advertisers for the attention of audiences attracted to the sport. Each Fall at World iSeries time, commerce and political programs equally are brought close to a standstill while a large part of the national attention is otherwise diverted.
The size of the audience attracted to each game, whether in person or by transmission, is the profession’s bread and butter. The individual player’s income will frequently be a direct reflection of his popularity and ability to attract an audience. Professional privacy is thus the very antithesis of the player’s need and goal.
With this background, the plaintiff, Warren Spahn, seeks an injunction and damages for the defendants’ unauthorized publication of a fictitious biography of his life.
The action is predicated on section 51 of the Civil Rights Law, which authorizes the double remedy where a person’s " name, portrait or picture is used within this state for advertising or for the purposes of trade ” without that person’s written consent. Its enactment may be traced directly to this court’s opinion in Roberson v. Rochester Folding Box Co. (171 N. Y. 538, 545), wherein we denied the existence of a legal right to privacy in New York but said that " The legislative body could very well interfere and arbitrarily provide that no one should be permitted for his own selfish purpose to use the picture or the name of another for advertising purposes without his consent.” In Rhodes v. Sperry & Hutchinson Co. (193 N. Y. 223, affd. sub nom. Sperry & Hutchinson Co. v. Rhodes, 220 U. S. 502) the statute enacted as a result of Roberson was held constitutional against claims that it deprived persons of liberty and property without due process of law and that it impaired the obligations of contract.
Over the years since the statute’s enactment in 1903, its social desirability and remedial nature have led to its being given a liberal construction consonant with its over-all purpose (Flores *328 v. Mosler Safe Co., 7 N Y 2d 276, 280-281; Lahiri v. Daily Mirror, 162 Misc. 776, 779). But at the same time, ever mindful that the written word or picture is involved, courts have engrafted exceptions and restrictions onto the statute to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest.
One of the clearest exceptions to the statutory prohibition is the rule that a public figure, whether he he such by choice or involuntarily, is subject to the often searching beam of publicity and that, in balance with the legitimate public interest, the law affords his privacy little protection (Koussevitzky v. Allen, Towne & Heath, 188 Misc. 479, affd. 272 App. Div. 759; Goelet v. Confidential, Inc., 5 A D 2d 226; see Hofstadter and Horowitz, The Eight of Privacy, § 6.5 et seq.).
But it is erroneous to confuse privacy with “ personality ” or to assume that privacy, though lost' for a certain time or in a certain context, goes forever unprotected (Binns v. Vitagraph Co., 210 N. Y. 51; Hill v. Hayes, 15 N Y 2d 986, affg. 18 A D 2d 485). Thus it may be appropriate to say that the plaintiff here, Warren Spahn, is a public personality and that, insofar as his professional career is involved, he is substantially without a right to privacy. That is not to say, however, that his ‘ ‘ personality ” may be fictionalized and that, as fictionalized, it may be exploited for the defendants’ commercial benefit through the medium of an unauthorized biography.
The factual reporting of newsworthy persons and events is in the public interest and is protected. The fictitious is not. This is the heart of the cases in point (Hill v. Hayes, 15 N Y 2d 986, supra; Koussevitzky v. Allen, Towne & Heath, 188 Misc. 479, affd. 272 App. Div. 759, supra; Goelet v. Confidential, Inc., 5 A D 2d 226, supra; Youssoupoff v. Columbia Broadcasting System, 19 A D 2d 865).
The plaintiff’s status as a public figure makes him newsworthy and thus places his biography outside the protection afforded by the statute. But the plaintiff does not seek an injunction and damages for the unauthorized publication of his biography. He seeks only to restrain the publication of that which purports to be Ms biography.
In the present case, the findings of fact go far beyond the establishment of minor errors in an otherwise accurate biog *329 raphy (see Koussevitzky v. Allen, Towne & Heath, 188 Misc. 479, 484, supra). They establish “ dramatization, imagined dialogue, manipulated chronologies, and fictionalization of events ” (opinion of the Appellate Division, 23 A D 2d 216, 221). In the language of Justice Markowitz, who presided at the trial, ‘ ‘ the record unequivocally establishes that the booh publicizes areas of Warren Spahn’s personal and private life, albeit inaccurate and distorted, and consists of a host, a preponderant percentage, of factual errors, distortions and fanciful passages ” (43 Misc 2d 219, 232). A sufficient number of specific instances of falsification are set forth in that opinion to make repetition here unnecessary.
It is urged upon us that application of the statute to the publication of a substantially fictitious biography will run afoul of the freedoms of speech and the press guaranteed by the First and Fourteenth Amendments to the Federal Constitution. The point is urged on the basis of the Supreme Court’s opinion in New York Times Co. v. Sullivan (376 U. S. 254). We think it has no application.
The question posed in New York Times Co. v. Sullivan (supra) was stated by Mr. Justice BRehítan as ‘ ‘ the extent to which the constitutional protections for speech and press limit a State’s power to award damages in a libel action brought by a public official against critics of his official conduct ” (p. 256; emphasis added). Moreover, Justice Brennan said (p. 270), “we consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.” The court thus held that “ the Constitution delimits a State’s power to award damages for libel in actions brought by public officials against critics of their official conduct ” (p. 283; emphasis added).
The present case deals neither with public officials nor official conduct. The free speech which is encouraged and essential to the operation of a healthy government is something quite different from an individual’s attempt to enjoin the publication of a fictitious biography of him. No public interest is served by protecting the dissemination of the latter. We perceive no constitutional infirmities in this respect.
*330 We thus conclude that the defendants’ publication of a fictitious biography of the plaintiff constitutes an unauthorized exploitation of his personality for purposes of trade and that it is proscribed by section 51 of the Civil Rights Law.
The order appealed from should be affirmed.
Chief Judge Desmond and Judges Ftjld, Yan Voorhis, Burke, Scileppi and Bergan concur.
Order affirmed.