[Civ. No. 740. Fifth Dist. Mar. 20, 1968.]

DI GIORGIO CORPORATION etc., Plaintiff and Respondent, v. VALLEY LABOR CITIZEN et al., Defendants and Appellants.

James Murray for Defendants and Appellants.

Herbert Pothier and Cerf, Robinson & Leland as Amici Curiae on behalf of Defendants and Appellants.

Brobeck, Phleger & Harrison, Donald D. Conners, Jr., Pettitt, Blumberg & Sherr and Blaine Pettitt for Plaintiff and Respondent.

GARGANO, J.—Plaintiff brought this action against the defendants charging all defendants with the publication of a

false and libelous article in the Valley Labor Citizen, a newspaper of general circulation, distributed in the San Joaquin Valley. Plaintiff sought to recover general and punitive damages. However, plaintiff did not allege or seek to recover special damages.

After a seven-day jury trial the jury returned a verdict holding all the defendants jointly and severally liable for $5,000 general damages and $25,000 punitive damages. Defendant Jeff Boehm then moved for judgment notwithstanding the verdict for himself only. The remaining defendants moved for a new trial. The court denied defendant Boehm's motion for judgment notwithstanding the verdict. It also denied the motion for a new trial "provided that plaintiff shall remit from the judgment all except the sum of $3,000.00 as general damages, and all except $10,000.00 as punitive damages." Plaintiff consented to the remission and judgment was entered accordingly. Defendants appeal from the judgment. In addition, defendant Boehm appeals from the court's order denying his motion for judgment notwithstanding the verdict.

On April 17, 1964, an article authored by defendant Jeff Boehm was published in the Union Gazette of the Olympic Press and was circulated in Santa Clara County. This article contained information supplied by one Ernesto Galarza and *inter alia* accused the plaintiff and a congressman with faking a congressional hearing report and using the false report as a weapon against union organization of farm workers. Galarza, however, was not employed by the Olympic Press or by defendant Boehm; he was a labor union representative engaged by labor unions to perform organizational work during labor disputes. In addition, he was also actively engaged in supplying information to labor newspapers for dissemination to labor union members. In fact, Galarza had recently won a lawsuit against the plaintiff and the details of the suit were also given in the article.

After Boehm's article was published in the Union Gazette, Galarza mailed a newspaper clipping of it to defendant George Ballis, the editor of the Valley Labor Citizen, an independently owned and operated newspaper published and circulated in the San Joaquin Valley. Ballis then republished the article without discussing it with anyone, not even with its author, defendant Boehm. At the time Ballis had never heard of or spoken to Boehm, but when plaintiff demanded a retraction, Ballis went to San Jose and discussed the article

with Boehm and Galarza. Afterwards Ballis refused to publish a retraction in the Valley Labor Citizen.

Defendants vigorously assert that there is no substantial evidence to support the judgment against defendant Jeff Boehm. They also allege that the jury instructions relating to Boehm's liability for the republication of his article in the Valley Labor Citizen were erroneous, confusing and conflicting. Thus, defendants contend that the judgment against Boehm must be reversed, and, since it cannot be reasonably separated on appeal from the judgment against the other defendants, it must also be reversed against all defendants. For obvious reasons, we shall deal with this contention first.

■ We have carefully reviewed the record and conclude that there is no substantial evidence to prove that defendant Boehm authorized, consented to, or participated in the republication of his article in the Valley Labor Citizen. And this is so even if we disregard all conflicts in the evidence and resolve all presumptions, inferences, intendments and questions of doubt in favor of the verdict. At the very best, plaintiff's evidence creates a mere suspicion. However, it does not meet the quantum of proof required to prove that Boehm was a party to what was tantamount to conspiracy to injure the plaintiff. As the court said in *Neblett* v. *Elliott,* 46 Cal.App.2d 294, 302 [115 P.2d 872] : ''It is only when plaintiff can show that a defendant has united or cooperated with others to inflict a wrong upon him that he is entitled to a joint recovery of damages against such defendants.''

It is undisputed that Ernesto Galarza was not employed by the Olympic Press in any capacity when Boehm's article was published in the Union Gazette. And the mere fact that Galarza furnished the information which Boehm used to write his article does not of itself prove that Boehm intended, authorized or directed Galarza to mail a clipping to the editor of the Valley Labor Citizen for republication in that separately owned and operated newspaper. To the contrary, it taxes the imagination to believe that a newspaper man employed by one newspaper would use such a circuitous method to furnish another newspaper with a news story he wanted published in that paper. On the other hand, it is reasonably clear from the evidence that when Galarza furnished Boehm with the information used by Boehm in his article and then mailed a clipping to the editor of the Valley Labor Citizen, he acted on his own initiative to subserve his own interests. As we have stated, Galarza was an independent union representa-

tive engaged in furnishing information to labor newspapers for dissemination to labor union members. Moreover, he had recently won a lawsuit against the plaintiff and the result of this lawsuit, together with details, was reported in the article.

Plaintiff points out that Ballis went to San Jose and discussed the article with Boehm and Galarza after Ballis received plaintiff's demand for a retraction and then refused to publish a retraction. It argues that this is sufficient to hold Boehm liable for the republication. This argument is without substantial merit. The cause of action against the Valley Labor Citizen arose when the article was published on April 17, 1964; under Civil Code, section 48a the retraction simply limits the extent of the damages recoverable by the plaintiff. Moreover, the decision as to whether a retraction would be made rested solely with the publisher of the Valley Labor Citizen (*Pridonoff* v. *Balokovich,* 36 Cal.2d 788 [228 P.2d 6]). Thus, the fact that Ballis discussed the article with Boehm before he made his decision not to retract does not make Boehm liable for the consequences of this decision.

The crucial question, therefore, is whether the judgment against defendant Boehm can be sustained on the theory that he could reasonably have foreseen the republication of his article in the Valley Labor Citizen, assuming *arguendo* that there was sufficient evidence to support an affirmative jury finding on this issue.

It is of course the general rule that, in the absence of a privilege, anyone who actively participates in the publication of a false and libelous statement is liable for special, general and even punitive damages. Moreoever, it is also the general rule that every repetition of the defamation is a separate publication and hence a new and separate cause of action though the repeater states the source (Prosser, Torts (2d ed.) p. 787). And, ordinarily the originator of the defamatory matter is also liable for each such repetition if he could reasonably have foreseen the repetition (*Siemon* v. *Finkle,* 190 Cal. 611 [213 P. 954]). As the court stated in *Curley* v. *Vick,* 211 Cal.App.2d 670, 673 [27 Cal.Rptr. 501]: "The general rule that the 'author of defamatory statements is not liable for a publication thereof where he neither authorized nor intended such publication to be made' . . . is, of course, qualified when such republication is reasonably foreseeable."

Significantly, plaintiff did not plead a cause of action against defendant Boehm on the theory of a foreseeable

republication, nor did it request the court to instruct the jury on this theory of liability. Thus, it is arguable that the jury's verdict cannot be supported on this ground.

In any event, in this state the general rules allowing general and punitive damages to a plaintiff for the publication of defamatory matter do not apply to newspapers and radio broadcasting stations. To the contrary, the liability of newspapers and radio broadcasting stations for the publication or broadcast of libelous matter has been carefully limited by statute. In fact, under Civil Code section 48a no one who participates in a libelous newspaper publication or radio broadcast, such as a reporter, columnist, author, critic, editor or publisher, is liable for either general or punitive damages unless a retraction or correction is first requested by the plaintiff and refused by the publisher of the newspaper or the operator of the broadcasting station (*Pridonoff* v. *Balokovich, supra,* 36 Cal.2d 788). Furthermore, to recover general or punitive damages the plaintiff must *plead* and *prove* that he requested a retraction or correction and his request was ignored. And finally, even if a retraction or correction is not published or broadcast as provided by the section, the plaintiff cannot recover punitive damages without proof of *actual* malice; malice cannot be inferred or presumed from the publication or broadcast alone.

We conclude that by legislative fiat a newspaper reporter who authors a libelous article for publication in a newspaper or newspaper chain for which he is employed and who does not authorize, consent to or intentionally participate in the republication of his article by another independently owned and operated newspaper or newspaper chain is not liable for general damages for the republication if the plaintiff does not plead and prove that he requested a retraction by the publisher of the newspaper in which the article initially appeared and his request was refused by the publisher. A contrary holding would effectively defeat the objects and purposes of section 48a. It would subject the publisher of a newspaper (who had no control over retractions by other newspapers) and all others who participated in the original publication of defamatory matter to multiple suits for general damages even though the publisher had published a retraction in his own newspaper or newspaper chain. As the California Supreme Court succinctly stated in *Werner* v. *Southern Cal. etc. Newspapers,* 35 Cal.2d 121, 132, 133 [216 P.2d 825, 13 A.L.R. 2d 252], when it upheld the constitutionality of section 48a:

"The Legislature could reasonably conclude that defamation suits against newspapers and radio stations constituted the most conspicuous example of the danger it sought to preclude. It is not prohibited by the equal protection clause from striking the evil where it is felt most. . . .

"Similarly in this case, we cannot say that the Legislature could not reasonably conclude that because of the business they are engaged in, newspapers and radio stations are the most frequent objects of defamation actions and that the danger of excessive damages in actions against them is greatest because of their reputed ability to pay. See, Morris, *Inadvertent Newspaper Libel and Retraction*, 32 Ill.L.Rev. 36, 43; cf., *Packard* v. *Moore*, 9 Cal.2d 571, 578-580 [71 P.2d 922], discussing rule of inadmissibility of evidence that defendant is insured in personal injury actions.

"Moreover, in balancing the danger of recoveries of excessive general damages against leaving plaintiffs with no effective remedy for injury to their reputations, the Legislature could properly take into consideration the fact that a retraction widely circulated by a newspaper or radio station would have greater effectiveness than a retraction by an individual and could thus class newspapers and radio stations apart."

 Moreover, we conclude that in no event can a newspaperman who authored a defamatory article be subjected to punitive damages for the republication of his article by an independently owned and operated newspaper if he did not intend, authorize or consent to the republication. Punitive damages may be awarded to the plaintiff under section 48a, for sake of example and by way of punishing a defendant who has made a publication with *actual* malice. However, the plaintiff is not entitled to such damages as a matter of right (*Brewer* v. *Second Baptist Church*, 32 Cal.2d 791 [197 P.2d 713]). Thus, since each repetition of a defamatory statement is itself a publication (a separate cause of action), to hold that a newspaperman is subject to punitive damages in each separate lawsuit which is filed against him merely because he could possibly have foreseen the republication of his defamatory article by independently owned and operated newspapers would undermine his statutory immunity and subject him to multiple punishments for the same offense. Worse yet, he could also be held liable for such damages without proof of *actual malice*, contrary to the express provisions of the statute. This in turn would lead to the type of selfcensorship that the Legislature apparently determined inimical to

the public interest when it enacted section 48a in the first place. As our Supreme Court also stated in the *Werner* case at page 134 of the opinion: "Section 48a may also be sustained under the equal protection clause on the theory that its purpose is to encourage the dissemination ·of news. Although it extends its protection to those who may deliberately and maliciously disseminate libels, the Legislature could reasonably conclude that it was necessary to go so far effectively to protect those who in good faith and without malice inadvertently publish defamatory statements.''

As we have stated, plaintiff did not raise the foreseeability issue in its complaint and no instruction was given by the court to the jury on this issue. In addition, plaintiff did not plead or prove that it requested the publisher of the Olympic Press to retract the article that was published in the Union Gazette on April 17, 1964, in the manner required by Civil Code section 48a. Consequently, it cannot recover general damages against the defendant Boehm on the theory that he could have reasonably foreseen the republication of his article in the Valley Labor Citizen. And since in no event could plaintiff recover punitive damages for the republication which this defendant did not authorize, consent to, or direct, the judgment against him must be reversed in its entirety.

We do not find it necessary to pass on the question of whether or not general damages lie against the author of a newspaper article for a foreseeable republication of the article where the plaintiff has alleged and proved that the newspaper which originally published the article has also refused his requested retraction. As we have stated, the plaintiff did not allege or prove that it requested a retraction of the article published on April 17, 1964, in the Union Gazette. We also make it clear that we do not here hold that the author of a false and libelous article which is published in a newspaper is not liable for special damages proximately caused by the republication of the same article in an independently owned and operated newspaper if he reasonably could have foreseen such republication. The plaintiff did not allege or seek special damages and we limit our decision to the facts of this case. We simply observe in passing that section 48a does not seem to change the general rules as to special damages.

The remaining question is whether judgment against defendant Boehm may be reasonably separated from the judgment against all defendants. If not, the judgment

against the other defendants must also be reversed (*Curley* v. *Vick*, 211 Cal.App.2d 670 [27 Cal.Rptr. 501]).

 Under section 48a "special damages" must be such as will compensate the plaintiff for losses suffered "in respect to his property, business, trade, profession or occupation." Likewise, "general damages" must compensate the plaintiff for actual detriment incurred, i.e., loss of reputation, shame, mortification and hurt feelings. Thus, as to special and general damages it is clear that a joint and several judgment against multiple defendants is subject to reasonable separation. This follows because the jury assesses the amount of such damages according to the evidence of plaintiff's detriment, and if the jury is true to its oath this amount would be the same regardless of the number of defendants named in the lawsuit. Consequently, a reversal as to one or more but not all defendants should not affect the remaining defendants.

 On the other hand, as we have stated, punitive or "exemplary" damages are awarded to the plaintiff, in the discretion of the court or jury, for the sake of example and by way of punishing a defendant who has made a publication with *actual malice*. However, such damages must be awarded to punish the defendant for his own wrong doing and not for the wrongful action of someone else, not even his own agent or employee (*Davis* v. *Hearst*, 160 Cal. 143 [116 P. 530]). Thus, to recover punitive damages against multiple defendants the plaintiff must prove malice in fact by each defendant; he must prove a malicious state of mind and evil motive on the part of each defendant. As the court stated in *Davis* v. *Hearst*, *supra*, at page 165 of the opinion: " 'In all these cases the malice proved must be that of the defendant. If two persons be sued the motive of one must not be allowed to aggravate the damages against the other. . . .' "

 With these principles in mind, we conclude that the judgment holding all defendants both jointly and severally liable for punitive damages is not reasonably subject to separation, and hence this part of the judgment must be reversed as to all defendants. The jury's verdict fixed punitive damages in a single amount against all defendants without separating their respective responsibilities. Consequently, even if we assume that the jury properly considered the state of mind and motive of each defendant in arriving at the amount for which they should be punished, we cannot tell to what extent it was influenced by the conduct, state of mind and motive of defendant Boehm. And since each defendant

is jointly and severally liable for the entire amount, we cannot say with reasonably certainty that the reversal of the judgment against defendant Boehm would not allow his conduct and motive to aggravate the damages against the remaining defendants contrary to the rule enunciated in *Davis* v. *Hearst, supra.* This is true even though the trial court reduced the amount payable and the plaintiff acquiesced to the remission.

Ordinarily a judgment awarding the plaintiff general damages would be subject to separation and would not require reversal against all defendants merely because it is reversed as to one defendant (see *Brewer* v. *Second Baptist Church,* 32 Cal.2d 791 [197 P.2d 713]). The instant case, however, is complicated by the confusing and conflicting instructions which the court gave to the jury. The court told the jury: "There are several defendants in this action. Under the law, if one is liable, all are liable. . . . Therefore it follows that if you return a verdict against one of the defendants, you must return a verdict against them all. However, in this respect, you are to make a separate determination as to the liability of the defendants, both on the question of punitive damages, and compensatory damages separately." The court also told the jury: "There is no testimony that the defendant, Jeff Boehm, was acting as the agent of any other defendants in this action, and therefore, as a matter of law, he was not the agent as such of the other defendants, and you must look to all the evidence in this case to determine whether he is liable in his own right, as you may determine under all the instructions given you by the court on the subject of libel. In other words, he stands in his own shoes as separately as an individual defendant." The court then compounded the confusion by allowing the jury to return a verdict holding all defendants jointly and severally liable for both general and punitive damages contrary to its instructions.

It is of course arguable that the jury was not misled by the court's instructions and that they understood that they were not required to bring in a verdict against the defendant Boehm simply because his article was republished by the other defendants in the Valley Labor Citizen. However, it is also arguable that the jury understood the court's instruction "if one is liable, all are liable" to mean that if Boehm was liable the remaining defendants were also liable. Thus, it is conceivable that the jury was unduly influenced by Boehm's conduct and motive when he initially published his article in the Union Gazette, and this in turn militated against the other

defendants. In fact, it is even possible that the jury rejected defendant's special defense that the republication of Boehm's article, in the Valley Labor Citizen was privileged under Civil Code section 47, subdivision 3, because they were unduly influenced by the said conduct and motive of defendant Boehm.[1] In other words, although we have stated that there was no substantial evidence for the jury to find that Boehm actually participated in the republication of his article in the Valley Labor Citizen, there was ample evidence relating to his conduct and motive regarding the original publication in the Union Gazette. And since the court gave no instruction on the foreseeability issue so that the jury could distinguish between liability imposed because of a foreseeable repetition and liability imposed because of actual participation in a republication itself, it is conceivable that the jury ascribed Boehm's initial conduct and motive to the other defendants. Thus, we cannot hold with any degree of certainty that the conflicting instructions were not prejudicial to the defendants or that a different verdict would not have been probable in the absence of the confusion (see *Nova* v. *Flaherty*, 145 Cal.App.2d 761 [303 P.2d 382]). Accordingly, we conclude that the judgment against defendant Boehm is not reasonably subject to separation and hence the entire judgment against all defendants must be reversed.

In view of the possibility of another trial, we make the following brief comments with reference to a newspaper's constitutional privilege to comment without liability for general or special damages under state libel laws about a public figure on matters in which the public has a vital interest.

In *New York Times Co.* v. *Sullivan*, 376 U.S. 254 [11 L.Ed. 2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412], the United States Supreme Court held that a state cannot consistently with the First and Fourteenth Amendments to the United States Constitution abridge the freedom of speech or the freedom of the

---

[1]The court had instructed the jury on privilege as follows:

''The only privilege which is available to defendants in this case is that contained in subdivision three of Section 47 of the Civil Code of California, which reads as follows:

'A privileged publication is one made in a communication without malice, to a person interested therein, (1) by one who is also interested, or, (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information.'

''It is for you to say in view of all of the evidence and the law as I am giving it to you, whether this publication is within that privilege.''

press to freely comment on matters in which the public has a vital interest by awarding damages to a public official for a false and defamatory statement relating to his official duty unless the verdict is based on proof of actual malice, i.e., proof that the defamatory statement was made ''with knowledge that it was false or with a reckless disregard of whether it was false or not.''

A few years later the Supreme Court in *Curtis Publishing Co.* v. *Butts,* 388 U.S. 130 [18 L.Ed.2d 1094, 87 S.Ct. 1975], extended the constitutional privilege articulated in the *Sullivan* decision as to comments about ''public figures'' with an additional qualification. A public figure who is not a public official may also recover damages on a showing of ''highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.''

Moreover, the court referred to persons as public figures who attain that status under ordinary tort rules by position alone, such as a prominent football coach, or by their purposeful activities which thrust their personalities into the vortex of an important public controversy. A person's status as a public figure also seems to depend upon whether that person commands sufficient continuing public interest and the means of counterargument to be able to expose to discussion the falsehoods and fallacies of defamatory statements (citing *Spahn* v. *Julian Messer, Inc.,* 18 N.Y.2d 324 [274 N.Y.S.2d 877, 221 N.E.2d 543]; *Whitney* v. *California,* 274 U.S. 357, 377 [71 L.Ed. 1095, 1106, 47 S.Ct. 641, 649]).

Significantly, the trial in the instant case was concluded prior to the Supreme Court decision in the *Curtis Publishing Company* case. Thus, no evidence was introduced and apparently no consideration was given by the parties or the trial court to the public figure issue. In fact, no jury instructions were given by the court or requested by the defendants on the issue. Moreover, this special defense was not raised by the defendants by way of an affirmative defense that was placed in issue in the pretrial conference order. It is manifest that in order to invoke this constitutional privilege a defendant must not only assert it by way of an affirmative defense, but he must allege sufficient facts to place the other party on notice (see *Pavlovsky* v. *Board of Trade,* 171 Cal.App.2d 110 [340 P.2d 63]). Consequently, whether the defendants will be entitled to assert the constitutional privilege articulated by the United States Supreme Court as against the plaintiff's

prayer for special or general damages if the case is retried will depend on the state of the pleadings and on the evidence presented at that time.

For the reasons that we have stated herein, the order of the trial court denying defendant Boehm's motion for judgment notwithstanding the verdict is reversed with directions to the court to enter judgment in favor of said defendant. The judgment against the remaining defendants is reversed and the matter is ordered remanded to the trial court for a new trial on all issues.

Conley, P. J., and Stone, J., concurred.