422 F.2d 1278
 OSCAR GRUSS & SON, Plaintiff-Respondent and Cross-Appellant,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY, Defendant-Appellant and Third-Party Plaintiff, and Cross-Appellee,
v.
Isidor BUCHMANN, Third-Party Defendant.
 No. 507.
 No. 508.
 Docket 33263.
 Docket 33311.
 United States Court of Appeals, Second Circuit.
 Argued February 10, 1970.
 Decided March 3, 1970.
 
 COPYRIGHT MATERIAL OMITTED Thomas A. Harnett, New York City (Joseph T. Keller, William D. Hand, Jr., New York City, on the brief), for appellant and cross-appellee.
 Alfred Berman, New York City (Guggenheimer & Untermyer, Marvin E. Pollock, Leon H. Tykulsker, New York City, on the brief), for respondent and cross-appellant.
 Before LUMBARD, Chief Judge, and FRIENDLY and FEINBERG, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 In 1961, Lumbermens Mutual Casualty Company issued a policy of insurance, known as a Brokers Blanket Bond, to Oscar Gruss & Son, a partnership dealing in securities. The policy insured Gruss against loss caused by fraudulent acts of employees. In July 1962, Gruss notified Lumbermens that a Gruss employee had apparently committed fraudulent acts which might cause substantial claims against Gruss. Claims in large amounts did subsequently descend upon Gruss and were finally settled at great expense. The reaction of Lumbermens, however, was to disclaim liability under the Brokers Blanket Bond policy and to resist to the end any claim for reimbursement by Gruss thereunder. Gruss eventually had to sue its insurer. In the fall of 1968, after four years of litigation in the United States District Court for the Southern District of New York, Gruss finally obtained a judgment against Lumbermens on the policy in the amount of $436,601.52, with costs of $4,321.95. Lumbermens appeals from that judgment and Gruss cross-appeals from the denial of one item of claimed loss and one item of costs. For reasons indicated below, we affirm on both appeals. We also invoke 28 U.S.C. § 1912 and F.R.A.P. 38 and award Gruss a total of ten per cent interest on its judgment, counsel fees of $7,500 on the appeal and double costs.
 
 I.
 
 2
 The action by Gruss against Lumbermens was brought in the New York Supreme Court in 1964, and was thereafter removed to the court below on grounds of diversity. The case was tried on a complaint which contained three causes of action, two of which concern us on this appeal. The first claimed $356,382 for loss sustained by plaintiff Gruss as a result of the dishonest acts of its employee, Isidor Buchmann, manager of plaintiff's wholly-owned Swiss subsidiary, Valoren & Handels, A.G. ("Valoren"). The second sought to recover court costs and attorney's fees amounting to $116,038, paid by Gruss in defending litigation brought against it because of Buchmann's fraudulent acts.[1] The first cause of action was tried to a jury, which returned a special verdict resulting in judgment for Gruss of $275,000 plus interest of six per cent from June 6, 1966, apparently the date of payment by Gruss on claims brought against it. The second cause of action was tried by the court, Richard H. Levet, J., who awarded Gruss $103,599.77, with interest of six per cent from varying dates. Before discussing the arguments of Lumbermens as to why we should set aside these awards, it will be helpful to state the facts.
 
 
 3
 From the evidence before it, the jury could have found the following: The policy in question was issued October 1, 1961, in the amount of $700,000. The policy insured Gruss against
 
 
 4
 Any loss through any dishonest, fraudulent or criminal act of any * * * Employees, committed anywhere and whether committed alone or in collusion with others * * *.
 
 
 5
 Later riders to the policy also added Valoren, the Swiss subsidiary, as a named insured and its office as a covered office. Buchmann, a Swiss national, had been employed by Gruss since 1955 as manager of Valoren. Valoren paid him a small salary, but his major compensation was in the form of commission payments sent to him monthly by Gruss on the brokerage orders transmitted to Gruss by Valoren from Swiss financial institutions for execution on the New York or American Stock Exchange. Before Gruss opened the Valoren office, the New York Stock Exchange had required Gruss, a member firm, to guarantee all liabilities of Valoren and to make Buchmann a direct employee and a Gruss registered representative, in accordance with Stock Exchange policy. Thereafter, a course of business dealing ensued between Gruss, on the one hand, and its subsidiary and Buchmann, on the other. There were periodic reports and audits, and the relationship was apparently uneventful and profitable.
 
 
 6
 In 1962 — after seven years — Gruss discovered that its confidence in Buchmann had been misplaced. Alerted by a telephone call from a Swiss banker that Valoren and Buchmann were in difficulty, one of the Gruss principals flew to Switzerland to confront Buchmann. At a meeting which lasted several hours, attended by lawyers for Gruss and Buchmann and by others, Buchmann revealed a series of fraudulent acts and concealed transactions. These included the conversion of securities belonging to previously undisclosed customers of Valoren, the embezzlement of the funds so obtained, the concealment of these transactions by means of entries on Valoren's books, and false reports to Gruss. The story thus uncovered was typical — Buchmann had set up his own vehicle for speculation with funds of Valoren customers and the then current collapse of the stock market brought matters to a head. What was unusual, perhaps, was that at another meeting that evening Buchmann signed a four-page typewritten document, which set forth the substance of his unhappy venture and his own dishonest acts. This statement and the testimony of three of the participants in the meetings were received at trial.
 
 
 7
 As a result of Buchmann's activities, both Valoren and Buchmann were placed into bankruptcy in Switzerland. Various Valoren customers demanded that Gruss compensate them for their losses, which totalled far more than the slight unpledged assets of Buchmann and Valoren. Beginning in the latter part of 1962, some 30 Valoren creditors started actions against Gruss in the Supreme Court, New York County, claiming damages of $764,000, essentially on theories of respondeat superior. After three years of vigorous litigation, the cases were settled, with the approval of a court-appointed referee, for a cash payment of $275,000 for distribution to Valoren's creditors; Gruss also agreed to subordinate its own claim as a creditor for $34,867. In addition to these losses, Gruss suffered the costs and legal fees of defending the actions against it because Lumbermens refused to undertake the defense. Not only did Lumbermens refuse Gruss any assistance, but in at least one respect discussed below, appeared to form a litigation alliance with Buchmann. In any event, Gruss sued Lumbermens on its policy, claiming the damages and obtaining the judgment set forth above. Both parties appeal from the determinations of the trial court, although the complaints of Gruss, as cross-appellant, are few. Those of Lumbermens, however, are assuredly not and to them we now turn.
 
 II.
 
 8
 Lumbermens has favored us with a barrage of reasons why the two awards to Gruss must be reversed. For example, we are told that the judgment should be vacated in toto and the complaint dismissed because there was no proof of dishonest acts by Buchmann, the proof of financial loss to Gruss was inadequate, and Buchmann was not an employee of Gruss. Lumbermens also argues that a new trial is necessary because Judge Levet struck four out of twelve defenses in a proposed amended answer, Lumbermens was deprived of an opportunity to take necessary pre-trial testimony, there were many erroneous rulings on evidence, including the admission of Buchmann's confession, and the trial judge was unfair. Finally, the award for attorney's fees is attacked as insufficiently supported by the record. We think that only two of these contentions require discussion.
 
 
 9
 Lumbermens objects to a pre-trial ruling of Judge Weinfeld and to admission of Buchmann's statement at trial. The facts as to the former are as follows: In October 1966, Lumbermens moved for the issuance of letters rogatory to take the depositions of Buchmann and two of his confederates, one of whom was present when Buchmann signed his statement. Because Switzerland does not allow oral depositions of its residents, the depositions would have had to be taken on written interrogatories only. Judge Weinfeld pointed out that prior to the application, representatives of Lumbermens, including its attorney in the action, had
 
 
 10
 made several trips to Switzerland where, with local counsel, accountants and investigators, they have, over extended periods, conferred and worked closely with the proposed deponents. The defendant's records of the conferences and interviews with the three alleged malefactors leave no doubt that they have cooperated and continue to cooperate with the defendant's representatives. Indeed, the defendant does not allege that it requires the depositions here sought for discovery purposes.
 
 
 11
 41 F.R.D. 279, 281. The judge also noted that the proposed deponents and Lumbermens had "parallel" and "closely allied" interests; i. e., in the Swiss criminal charges against them, the witnesses had raised the defense under Swiss law that the criminal acts were done with the knowledge of one of the Gruss partners; this strong motive to exculpate themselves would sustain the insurer's defense that knowledge by Gruss of the criminal conduct terminated the liability of Lumbermens on the bond. Under these circumstances, the judge held that, 41 F.R.D. at 282:
 
 
 12
 It would be devastatingly prejudicial to plaintiff [Gruss] to issue Letters Rogatory to secure the testimony of these hostile witnesses without the opportunity of confrontation and a face-to-face cross-examination.
 
 
 13
 After pointing out that Lumbermens could probably arrange to have these witnesses testify at the trial or at a deposition in a country where oral cross-examination would be allowed, the judge denied the application. The ruling was obviously a sound exercise of discretion and requires no further discussion on the merits. Lumbermens never did move for the taking of an oral deposition of Buchmann, or of the other two witnesses, on suitable conditions or explain why the latter (who were willing to come to New York) were not produced at trial. Yet, Lumbermens claims to us that Judge Weinfeld's decision tied its hands at the "discovery" stage and denied it "the opportunity to discover facts necessary to establish the defense of its case."[2] In view of the cooperation Lumbermens was obviously getting from the witnesses, the implication that this ruling hampered its preparation for trial is utterly without merit.
 
 
 14
 The other argument of Lumbermens that we think requires further comment is the admission of Buchmann's written statement at trial. Appellant claims that New York law required exclusion, relying on Letendre v. Hartford Accident & Indemnity Co., 21 N.Y.2d 518, 289 N.Y.S.2d 183, 236 N.E.2d 467 (1968). Judge Levet concluded that the Letendre opinion was strong authority not for exclusion of the evidence — as Lumbermens contends — but for its admission. We agree with this view; indeed we do not see how a contrary one could be reasonably entertained. In Letendre, the New York Court of Appeals disavowed earlier limiting cases and held admissible against an insurance company two inculpatory statements by an employee made months after the acts of dishonesty. The court pointed out that otherwise an employer may be deprived of what may be the only substantial evidence he has and that the risk of collusion is not great; i. e., "It is not likely that [an employee] would admit to a theft merely to accommodate his employer." 21 N.Y. 2d at 523, 289 N.Y.S.2d at 187, 236 N.E. 2d at 469. Lumbermens argues that Letendre allows such evidence to be admissible only when the declarant is available for cross-examination. This completely misreads the Letendre holding and puts the cart before the horse. The fact that the declaring employee (Tremblay) was available at trial created the problem in Letendre; had he not been his out-of-court inculpatory statements would have been clearly admissible as a declaration against pecuniary interest. 21 N.Y.2d at 524, 289 N.Y.S.2d 183, 236 N.E.2d 467; Alexander Grant's Sons v. Phoenix Assurance Co., 25 A.D.2d 93, 267 N.Y.S.2d 220 (4th Dep't 1966); 5 J. Wigmore, Evidence §§ 1455, 1456 (3d ed. 1940). In Letendre, the Court of Appeals decided that the declaration was admissible despite the fact — not because of it — that the witness was available to testify. 21 N.Y.2d at 524, 289 N.Y.S.2d 183, 236 N.E.2d 467. In this case, Buchmann was unavailable, his statement was obviously against his pecuniary interest, and its taking was surrounded by solemnity and safeguards. See Comment, Admissibility of Extrajudicial Admissions, 20 Syracuse L.Rev. 640 (1969). The admission of the statement was clearly not error, and the argument that Letendre supports its exclusion is baseless.
 
 
 15
 We have considered Lumbermens' other arguments to us and none has the slightest merit. Indeed, after a full review of the record, we believe that most are far-fetched indeed. Thus, the evidence that Buchmann had committed fraudulent acts was overwhelming. To argue, as Lumbermens does in its brief to us, that there was no proof of "any motive of financial gain" for Buchmann or of his "dishonesty in the common meaning of man" and that "At most, respondent showed that Buchmann was stupid. * * *"[3] is simply ridiculous and constitutes an imposition not only on Lumbermens' adversary but on this court. Similarly, Lumbermens claims that there was insufficient proof of the services rendered Gruss by counsel in defense of the actions of the Swiss creditors. The argument is frivolous; its nature is indicated by the attempt to minimize the length of a deposition as having "only 964 pages of transcript."[4] (Emphasis added.) In any event, we do not intend to dignify these and other makeweight arguments by separately discussing each one. Moreover, the net impression we get from the record is one of calculated delay and a thrashing about by Lumbermens for theories — even of dubious or no value — to evade its obligations under its insurance contract. Thus, in addition to the instances set forth above, shortly before trial Lumbermens filed its list of proposed exhibits and witnesses, totalling 1,151 exhibits and 35 witnesses; while some of these related to defenses which the judge had stricken, the others did not. Nevertheless, after Gruss rested at trial, Lumbermens offered only a few exhibits and presented no witnesses. Similarly, Lumbermens argues that there was no proof that Buchmann was an employee of Gruss, but the evidence to the contrary was abundant. It should be kept in mind that Gruss in 1961 thought it was purchasing protection against faithless employees, not a law suit,[5] and that it has been trying to enforce its rights under the Brokers Blanket Bond for almost eight years. In any event, on the basis of the conduct of the appeal alone, we regard this as an appropriate case for invoking both 28 U.S.C. § 1912, which provides:
 
 
 16
 Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs.
 
 
 17
 and F.R.A.P. 38, which states:
 
 
 18
 If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.
 
 
 19
 In view of the superfluity of issues on appeal, the frivolity of almost all of them, and the briefing of many in a manner that simply ignored the abundant evidence supporting the determination of the jury and the judge, we exercise our discretion under the statute and rule as follows: Gruss is awarded an additional four per cent interest on the judgment appealed from, double costs on Lumbermens' appeal, and $7,500 in attorney's fees.
 
 III.
 
 20
 We turn now to the cross-appeal of Gruss, which questions denial of one item of claimed damages and the assessment of costs. On its first cause of action, Gruss claimed five items of damage, the largest of which was the $275,000 it had paid out in settlement of claims of Swiss creditors of Valoren. The other four items were claims of Gruss and its principals against Valoren or Buchmann, which Gruss agreed to subordinate to the claims of Swiss creditors; these items as alleged were $34,867.31 for money owed Gruss and its principals by Valoren, $23,000 paid by Gruss to Valoren as a capital contribution, and two cash advances to Buchmann on which $13,264.91 and $10,000, respectively, were still owing. In its special verdict, the jury found for Gruss on the claim of $275,000, but denied the other four. Gruss appeals only as to the item of $34,867.31. This indebtedness allegedly represented the proceeds in the Gruss accounts at Valoren from sales in Switzerland of Gruss securities, which had been entrusted to Valoren as broker. Gruss claims that there was no tenable basis on which the jury could have rejected this item of damage, in view of its overall findings that Lumbermens was liable for the losses caused by Buchmann's dishonest acts. However, while we might have well decided the other way were we members of the jury, we do not regard its verdict as irrational. The records of the Swiss bankruptcy proceeding apparently were offered not as proof of precise facts, but merely to show the basis for the $275,000 settlement with Swiss creditors who were suing in New York. Moreover, the jury may have felt that additional proof was required to buttress a claim of intercorporate loss (Gruss dealing with Valoren) as distinct from loss suffered by payments to hostile third parties. In any event, whatever may be our power here to order judgment notwithstanding the verdict on this item, see Neely v. Martin K. Eby Construction Co., 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967); O'Connor v. Pennsylvania R.R., 308 F.2d 911, 915 (2d Cir. 1962), we suppress our doubts about the jury's action and follow the policy of upholding a jury verdict. Cf. Studley, Inc. v. Gulf Oil Corp., 407 F.2d 521 (2d Cir. 1969).
 
 
 21
 The final point on the cross-appeal requires little discussion. Gruss maintains that in the taxation of costs it was improperly denied $2,003.20 for daily transcripts of the trial and of pre-trial hearings. Judge Levet considered the matter on a post-trial motion and denied the item. While we might have held these transcripts to be "necessarily obtained for use in the case," 28 U.S.C. § 1920, if we had presided at the trial, we believe that the matter was one for discretion of the trial judge. Farmer v. Arabian American Oil Co., 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); 6 J. Moore, Federal Practice ¶ 54.7[7], at 1375 (2d ed. 1966). Since we do not believe that the ruling was an abuse of discretion, we will not interfere with it.
 
 
 22
 Judgment affirmed on the appeal and cross-appeal. Gruss is awarded an additional four per cent interest on the judgment, double costs on Lumbermens' appeal and attorney's fees of $7,500. On the cross-appeal, each party bears its own costs.
 
 
 
 Notes:
 
 
 [1]
 The third cause of action was injected into the case after Lumbermens contended that Buchmann was a partner or joint venturer, not an employee. The action was based upon another Lumbermens policy, which covered a defaulting partner. The trial court dismissed this action on the ground that there was no evidence that Buchmann was a partner or joint venturer
 
 
 [2]
 Appellant's brief, pp. 2, 32
 
 
 [3]
 Id. at 35, 37.
 
 
 [4]
 Id. at 47.
 
 
 [5]
 For some years before, Gruss's insurance against this risk had been written by another company, but Lumbermens had persuaded Gruss to give this business to it