Harry B. Frank, J.
Plaintiff, the widow of the world-renowned author Ernest Hemingway, seeks a preliminary injunction, both on her own behalf and as executrix of her husband’s estate, to enjoin the forthcoming publication by the *727 defendant Random House of a book entitled “Papa Hemingway ” written by the defendant Hotchner.
Hotchner, himself a successful author and playwright, was admittedly a close and intimate friend of both Hemingways up to the time of the writer’s death in 1961, and while his friendship with the plaintiff continued for some time thereafter it was apparently rendered asunder by the literary effort presently in issue. Plaintiff has submitted the original galley proofs of the book as an exhibit in support of her application and defendants have countered with a set of revised proofs in the form actually scheduled for publication. It is, of course, the latter version which is germane and which will be referred to upon the instant disposition.
The book involved may be characterized as a biographical study of Hemingway chronologically limited to the period from 1948, when Hotchner first met him, up to the time of his death some 13 years later. The format and narrative style of the work make immediately apparent that it is intended as a subjective presentation from the vantage of the friendship, camaraderie, and personal experiences that the younger author shared with the literary giant. Their adventures, their travels, their meetings are all set forth in detail and the portrait of Hemingway that emerges is shaded in terms of the unique self that he manifested and revealed in the course of his particular relationship with Hotchner. There is throughout the aura of meeting and knowing Hemingway on the same first-hand basis as the defendant author. This sense of intimacy and immediacy is heightened by the liberal use of a conversational format wherein Hemingway is quoted extensively but always within the confines of conversations to which Hotchner was also a party. A number of these conversational passages are contemplative in tone and include reminiscences by the great author on a Avide variety of topics ranging from the personal to the literary. The individual plaintiff herein is mentioned in various places throughout the book in a manner consistent Avith her status as the central figure’s wife.
Plaintiff’s application for injunctive relief is predicated upon four causes of action, three of which relate to the rights of the estate. Briefly stated, those claims are (1) that all of the material incorporated in the book which is based upon the language, expressions, comments and communications of Ernest Heming-Avay, is subject to a common-law copyright, that is, the right of first publication of such material, which right belongs solely to his estate; (2) that the use of such material by defendants would constitute unfair competition in that it would improperly *728 appropriate plaintiff’s property and would unfairly compete with other literary works created and written by Ernest Hemingway ; and (3) that the book improperly incorporates material which came into the defendant author’s possession while occupying a position of trust and confidence to the late Ernest Hemingway. The fourth cause of action is asserted on plaintiff’s own behalf individually and charges that the various references to her in the book constitute a violation of her statutory right of privacy under section 51 of the New York Civil Eights Law.
A preliminary injunction is always a drastic remedy and the one seeking to invoke such stringent relief is obliged to establish a clear and compelling legal right thereto based upon undisputed facts. The normal reluctance to impose a summary restraint in advance of a full and complete trial is particularly acute in a case such as this which deals with the publication of a book. Before the court will intrude into an area fraught with sensitivity in its possible impingement upon fundamental democratic and intellectual institutions, it will require a showing by the movant of a right, both legal and factual, in most unequivocal terms.
The plaintiff has clearly failed to sustain such burden with respect to the somewhat amorphously pleaded charges of “ unfair competition ” and breach of “ fiduciary duties imposed by a relationship of trust and confidence ”. The allegations directed to such claims are so vague and conclusory as to be almost meaningless, and even if they were not strenuously contested by defendants, they would fall far short of the type of legal and factual presentation necessary to support the relief presently sought.
Plaintiff’s plaint on her own behalf of invasion of privacy in violation of section 51 of the Civil Rights Law is likewise insufficient. Ever since its enunciation in the classic article by Brandéis and Warren in 1890 (The Eight to Privacy, 4 Harv. L. Eev. 193), the doctrine of “privacy” has evoked serious judicial attention directed toward some pragmatic adjustment of its status in its inevitable conflict with the competing doctrines of ‘ ‘ the right of the public to know ’ ’ and ‘ ‘ the freedom of the press to inform ”. The individual’s security has fared best when pitted against naked commercial assault, and protection is afforded under the statute where the invasion has been solely for ‘ ‘ advertising purposes, or for the purposes of trade ’ ’. A book of biographical import such as is here involved, however, has been held not to fall within such category. Compelling public interest in the free flow of ideas and dissemination of factual information has outweighed consideration of individual *729 privacy in conjunction with factual publications of such type, whether authorized or not, and as to such book the statutory proscription is ordinarily without relevance. (See Koussevitzky v. Allen, Towne & Heath, 188 Misc. 479, affd. 272 App. Div. 759; Spahn v. Julian Messner, Inc., 23 A D 2d 216; Sidis v. F-R Pub. Corp., 113 F. 2d 806.) Moreover, plaintiff’s status as the wife and widow of a man of celebrated prominence who was the recipient of both the Nobel and Pulitzer Prizes during his lifetime and her own activities incidental to such position have thrust her into the category of a newsworthy personality who, as a figure of public interest, is dehors the protection of the statute. (Cf. Goelet v. Confidential, Inc., 5 A D 2d 226; Werner v. Times-Mirror Co., 193 Cal. App. 2d 111; Gautier v. Pro-Football, 304 N. Y. 354.)
While proof of fabricated or distorted statements might provide recourse even in such context (see Spahn v. Julian Messner, Inc., supra; Hofstadter and Horowitz, The Eight of Privacy, p. 56), plaintiff’s bare allusion to “misstatements of fact” without any further specification or particularization is wholly insufficient for such purpose.
We turn finally to consideration of the claim primarily relied upon by plaintiff, that of “common-law copyright”. Such copyright, which is separate and distinct from the protection afforded by the statutory copyright law, is simply the right which the author or proprietor of an unpublished literary work has to the first publication of such work, or his alternative right to withhold it from publication for so long as he is disposed. (See Chamberlain v. Feldman, 300 N. Y. 135.)
While the moving papers charge that the book includes statements, conversations and words expressed by Ernest Hemingway in “letters, wires and tape recordings ”, such allegations have no relevance to the revised proofs of the book submitted hereon which indicate that substantially all such material has been deleted. With respect to the proofs in their present posture, there has been no showing by plaintiff that they contain any matter quoted directly from letters sent by Hemingway or that there is more than a de minimis, if at all, infringement of any copyrighted material including the contents of any tape recordings. All that is shown is the inclusion throughout the book, in substantial measure, of conversations in which Hemingway is apparently quoted verbatim, as are defendant Hotchner and various others. Defendant Hotchner contends that such conversations are not necessarily verbatim but are his renditions based upon notes which he kept and recorded during *730 the years of his friendship with Hemingway and his natural talent for remembering such conversations.
We are thus confronted with the novel and provocative question as to whether a person’s participation in spontaneous oral conversations with friends over a course of years, in distinction to lectures or prepared dialogues, may be considered a literary work subject to a common-law copyright. It appears that this question of possible categorization of ordinary conversation as a literary work or property is one of first impression. While reference to cases dealing with letters or lectures might afford refuge by analogy, the didactics of logic provide a curiously unsatisfying vehicle for resolution of the problem at hand. We are dealing here with a possible limitation upon “ speech ”, an area pregnant with social and historical implications striking at the very fundamentals of our political structure. The free and unfettered exchange of ideas and information of all types has been a hallowed tradition that has served to nourish an informed and alert citizenry. The intellectual benefits derived from access to the intimate articulations and experiences of figures of note and achievement are emphatically demonstrated by the enduring fame and inspirational stimulus of the works of recorders such as Plutarch, Boswell and Carlyle. That the restrictive action here sought would serve in large measure to frustrate the continued availability of such hitherto permissible material is not without significance. Social cost and the public interest may be considered. (Cf. University of Notre Dame v. Twentieth Century-Fox Film Corp., 22 A D 2d 452, affd. 15 NY 2d 940.)
Conversation is a media of expression of unique character. Because of its several nature any conversational exchange necessarily reflects the various participants thereto not only with respect to the direct contributions of each but also insofar as each party acts as a catalyst in evoking the thoughts and expressions of the other. The articulations of each are to some extent indelibly colored by the intangible influence of the subjective responses engendered by the particular other. Conversation cannot be catalogued as merely the cumulative product of separate and unrelated individual efforts, but, on the contrary, it is rather a synthesized whole that is indivisibly welded by the interaction of the parties involved. As a participant in the conversations, the defendant Hotchner would be as much an architect thereof as any of the other participants. In this case, where most of the quoted conversations took place between the defendant author and the subject of the work, such conversations necessarily reflect a duality that defies dissection or *731 divisibility. In light of the interaction which renders conversation indivisible, it is difficult to see how conversation can be held to constitute the sort of individual intellectual production to which protection is afforded by way of a common-law copyright.
Moreover, while plaintiff emphasizes the quantitative extent to which her husband’s conversational expressions are used in the book and attempts to spell out therefrom a separate literary property, she overlooks a vital factor. These random and disconnected oral conversations are given some semblance of form only by virtue of their arrangement in the context of the defendant author’s literary creation. Standing completely alone they are merely a disoriented conglomeration of unconnected expressions. It is the manner of defendant’s incorporation and presentation of these conversational segments that organizes them into a coherent format and renders them meaningful. It is clear, therefore, that plaintiff has failed to establish any right to a common-law copyright to any portion of the book in question, and her claim in that regard must necessarily be held insufficient to warrant the injunctive relief sought.
In addition to the foregoing, other factors herein which militate against the granting of the requested injunctive relief are plaintiff’s silence and seeming acquiescence over the course of the three-year period during which she knew that defendant was working on this book, her rise to action only after preparation and arrangements for publication and distribution of the book had reached an advanced stage, and the disproportionate economic burden which would fall upon the defendants at this stage.
Upon all of the foregoing, this application for a preliminary injunction is in all respects denied.